Alexander Chen [SBN 245798]
Alexc@inhouseco.com
William R. Walz [SBN 136995]
ww@inhouseco.com
Theodore Lee [SBN 281475]
tlee@inhouseco.com
INHOUSE CO. LAW FIRM
7700 Irvine Center Drive, Suite 800
Irvine, California 92618
Telephone: (949) 250-1555
Facsimile: (714) 882-7770

Attorney for Plaintiff Sincere Orient Commercial Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **SINCERE ORIENT COMMERCIAL CORPORATION**, a California corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>**CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY**, California unit of local government; **FOX LUGGAGE, INC.** a California corporation; and **DOES 1 through 50**, inclusive,<br><br>　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**1. Unlawful Sale of Public Property**<br>**2. Unlawful Interference With Prospective Economic Advantage**<br>**3. Breach of Covenant of Good Faith and Fair Dealing**<br>**4. RICO**<br>**5. Sherman Act §1, Unreasonable Restraint of Trade** |

//

//

1
COMPLAINT

COMES NOW Plaintiff, Sincere Orient Commercial Corporation ("SOCC") and presents the following allegations and facts in support of this Complaint on all causes of action stated herein against the named Defendants, City of Industry, Successor Agency to the Industry Urban-Development Agency (the "City"), Fox Luggage, Inc. ("Fox Luggage"), and Does 1-50 as follows:

## NATURE OF THE CASE

The City solicited bids for the purpose of auctioning for sale to the public surplus real property commonly known as 125 Orange Avenue, City of Industry, California 91744. The City received several bids, including bids from SOCC and Fox Luggage. SOCC's bid was the highest of all bids offered for the purchase of the property. Nevertheless, the City declared Fox Luggage the winning bidder. The City and Fox Luggage are now in the process of drafting final purchase documents. The sale, however, is unlawful. The City violated local ordinances and state law that prohibit the sale of City-owned property for anything less than full and adequate consideration. By its unlawful conduct, the City, moreover, deprived SOCC of fair and lawful consideration of its competing bid. By this action, SOCC seeks assistance from the Court to enjoin, or set aside, the sale.

## JURISDICTION AND VENUE

1. Plaintiffs bring this action seeking damages, permanent injunctive relief, civil penalties, and reasonable attorneys' fees pursuant to Section 4 (15 U.S.C. § 15) and Section 16 of the Clayton Act (15 U.S.C. § 26) for violations of Section 1 of the Sherman Act (15 U.S.C. § 1).

2. This Court has original jurisdiction over the subject matter of all causes of action alleged in this Complaint pursuant to 28 U.S.C. § 1331 and § 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiffs' state law claims are so related to the federal question claims that they form part of the same case or controversy that would ordinarily be tried in one judicial proceeding.

3. Venue in this Court is proper pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22) and 28 U.S.C. § 1391. Defendants transact business in the United States, including in this

district, committed an illegal act, or are found in this district, and a substantial part of the events giving rise to the claims arose in this district.

## PARTIES

4. Sincere Orient Commercial Corporation is a California corporation registered to do business in the State of California.

5. City of Industry, Successor Agency to the Urban-Development Agency is a unit of local government that is a body corporate and politic and is a legal subdivision of the State of California.

6. Fox Luggage, Inc. is a California corporation.

## GENERAL ALLEGATIONS

7. The City owns property commonly known as 125 Orange Avenue, City of Industry, CA 91744 (the "Property").

8. The City maintains a web page that publishes a "Property for Sale" notice ("Notice"), and the Property was listed as one of the properties for sale by the City.

9. Timely bid proposals were submitted by SOCC, Fox Luggage, and others. In particular, on or around February 22, 2016, Brett Dedeaux on behalf of DP Orange LLC ("DP Orange") submitted its bid proposal in the amount of $4,688,888. A copy of DP Orange's bid proposal are attached as **Exhibit A**.

10. On or around February 24, 2016, SOCC submitted its bid proposal in the amount of $5,300,592.00. A copy of SOCC's bid proposal is attached as **Exhibit B**.

11. On or around February 24, 2016, CEG Development, LLC submitted its bid proposal in the amount of $4,902,000. A copy of CEG Development's bid proposal is attached as **Exhibit C**.

12. On or around February 24, 2016, KM LLC submitted its bid proposal in the amount of $4,700,000. A copy of KM LLC's bid proposal is attached as **Exhibit D.**

13. On or around February 25, 2016, Fox Luggage, Inc. submitted its bid proposal in the amount of $5,000,000. A copy of the Fox Luggage, Inc.'s bid proposal is attached as **Exhibit E**.

14. On or around April 22, 2016, DP Orange submitted a revised bid proposal in the amount

of $5,310.000. A copy of DP Orange's revised bid proposal are attached as **Exhibit F**.

15. After the City's receipt of these bid proposals, City officials met privately in closed sessions to consider the bids on April 28, 2016, according to Meeting Agenda Minutes. A copy of the April 28, 2016 Meeting Agenda Minutes is attached as **Exhibit G.**

16. After almost four months after SOCC's bid proposal submission, SOCC has not receive any communication from the City regarding its bid. On June 17, 2016, SOCC requested that the City provide an update as to the status of the selection and sale of the Property. A copy of the SOCC's June 17, 2016 letter is attached as **Exhibit H**.

17. Almost immediately thereafter, on June 20, 2016, in a letter by the Executive Director of the City, Paul Philips, to Wayne Wang of Fox Luggage, the City informed Fox Luggage that its bid had been selected as the successful proposal. A copy of the letter from the City to Fox Luggage is attached as **Exhibit I**.

18. After learning that another bid was selected as the successful proposal, SOCC sent a second dated June 23, 2916 letter to the City indicating that SOCC would be willing to match the contingencies of the selected bid and that the City should reconsider since SOCC's bid proposal was the highest bid. A copy of SOCC's letter dated June 23, 2016 is attached as **Exhibit J**.

19. In its July 28, 2016 Regular Meeting, the City ratified the purchase agreement with a memorandum (the "Memorandum") referring to the Fox Luggage bid as exceeding the appraisal for the Property. Curiously, the Memorandum made no mention of that fact that the Fox Luggage bid proposal was not the strongest offer—in fact, there were two offers that were stronger than Fox Luggage's bid. A copy of the Memorandum is attached as **Exhibit K**.

20. On August 2, 2016, the Oversight Board of The Successor Agency to the Industry Urban-Development Agency met and ratified the Successor Agency's resolution for the sale of the Property to Fox Luggage. Curiously, again, the Oversight Board made no mention that there were two other bids stronger than Fox Luggage's bid. A copy of the Oversight Board's August 2, 2016 Regular Meeting Minutes is attached as **Exhibit L.**

21. On August 10, 2016, the City provided a fully executed purchase agreement between

the City and Fox Luggage for escrow of the Property. A copy of the purchase agreement is attached as **Exhibit M**.

22. On or around July 12, 2016, SOCC sought to obtain copies of public records relating to the bid selection for the Property pursuant to California Public Records Act, Government Code Sec. 6250 *et seq*. A copy of SOCC's July 12, 2016 letter for the request to inspect or obtain copies of public records relating to the Property is attached as **Exhibit N.**

23. Thereafter, SOCC received no response from the City after almost a month. On August 10, 2016, SOCC sent a second letter for the request to inspect or obtain copies of public records relating to the Property. The August 10, 2016 letter is attached as **Exhibit O**.

24. In response to SOCC's request, on or around August 22, 2016, the City produced some documents relating to bid selection for the Property located at 125 Orange Avenue, City of Industry, CA.

25. After reviewing the documents produced by the City, SOCC became aware that the documents produced by the City was incomplete. At the minimum, the documents were missing the bid proposals from Fox Luggage and from DP Orange. Curiously, it was perplexing that the City just happens to omit two of the most important documents relating to the request—the documents relating to the "winning bid" from Fox Luggage and the documents relating to another bid that was higher than the bid from Fox Luggage. Clearly, something is amiss.

26. On or around October 21, 2016, SOCC sent a letter to the City requesting for a supplemental response to SOCC's request to inspect or obtain copies of public records relating to the Property. A copy of the October 21, 2016 SOCC letter to the City is attached as **Exhibit P**.

27. On October 28, 2016, the City provided a supplemental response to SOCC's supplemental request. A review of the documents provided by the City revealed that SOCC had submitted the highest bid proposal, and yet the bid from Fox Luggage was chosen as the winning bid.

28. The consideration for the Property to the City proposed under the Fox Luggage bid

proposal consists of the following:

    (a)    Sale price of five million dollars ($5,000,000)

    (b)    30 days contingency period

    (c)    15 days to close escrow after removal of all contingencies

29.    The consideration for the Property to the City proposed under SOCC consists of the following:

    (a)    Sale price of five million three hundred thousand five hundred ninety dollars ($5,300,592)

    (b)    60 days contingency period

    (c)    30 days to close escrow after removal of all contingencies

30.    Clearly, SOCC submitted the highest bid, and one which was otherwise substantially comparable in its terms and provisions to the bid of Fox Luggage. However, as the highest bidder, SOCC's bid exceeded Fox Luggage Bid by over $340,000. Moreover, SOCC had subsequently reached out to the City to indicate that SOCC was willing to match all the other terms of its bid to match those of Fox Luggage Bid.

31.    Given that the non-cash consideration proposed under the Fox Luggage Bid presents no clear, certain, or present benefit to the City and that the City has received bids (including from SOCC) to purchase the Property for cash consideration in excess of the cash consideration stated therein, the City's proposed sale of the Property to Fox will not be, and is not, in exchange for full and adequate consideration. Therefore, there was no justifiable reason for the City to select the bid from Fox Luggage as the winning bid given that SOCC's bid was $340,000 higher.

32.    Through its legal counsel, SOCC expressed its concerns that the City's bidding process was suspect and had been unfairly conducted. Despite several correspondences, the City would not offer any explanation or comment as to the suspect bidding process. A further review of the documents provided by the City also did not reveal any documents responsive to SOCC's inquiries regarding why, in the face of a much higher bid from SOCC, the City instead chose the bid from Fox Luggage.

33. In its own investigation of this matter, to determine why the City inexplicably selected the much lower bid from Fox Luggage over SOCC's superior bid, SOCC and its counsel became informed confidentially, and thereby gained substantial reason to believe, that the City had been improperly influenced in awarding the sale to Fox Luggage because of gifts and other consideration given to a member or members of the City's bid evaluation committee.

34. The City has been entirely evasive in this matter, avoiding any response or comment whatsoever to repeated requests for explanation or justification as to why it awarded the sale under the far inferior bid of Fox Luggage.

35. In SOCC's review of all of the documents produced by the City, there appeared to be unwarranted favoritism extended by the City to Fox Luggage, without explanation offered or suggested in the comparison of the bids submitted each by Fox Luggage and SOCC, which are only distinguished by the fact that SOCC's losing bid was $340,000 higher than that of Fox Luggage.

36. In a letter dated November 11, 2016, SOCC demanded that the City set aside the sale of the Property and accept the original highest bid or to reopen the bidding process for the Property. The City made no response. A follow up letter dated December 2, 2016 from SOCC to the City for the same demand was also ignored. A copy of the November 11, 2016 SOCC letter and the December 2, 2016 SOCC letter to the City are attached as **Exhibit Q**.

37. On December 30, 2016, a Notice of Claim from SOCC against the City was sent to the City. Again, the City made no response to SOCC's notice. A copy of the Notice of Claim is attached as **Exhibit R**. Thereafter, the current action ensued.

## FIRST CAUSE OF ACTION

### (To Enjoin or Set Aside Unlawful Sale of Public Property)

38. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

39. The City's proposed sale of the Property to Fox Luggage is unlawful and in violation of California law, which requires that the disposition of any real property owned by the City to be in exchange for a clear, present benefit that reflects fair market value.

40. The City's proposed sale of the Property to Fox Luggage is unlawful and in violation of generally applicable California law, which requires that the disposition of public property be in exchange for a clear, present benefit that reflects fair market value and which further, specifically, prohibits assignment of value for future or uncertain benefits.

41. SOCC is entitled to judgment enjoining the City from proceeding with the sale of the Property to Fox Luggage, or, alternatively, if the sale to Fox Luggage is consummated, judgment setting aside the City's sale of the Property to Fox Luggage.

## SECOND CAUSE OF ACTION

### Unlawful Interference With Prospective Economic Advantage

42. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

43. Plaintiff has had continuing economic relationships with its clients, as well as prospective economic relationships reasonably anticipated to all defendants.

44. Defendants knew or should have known about Plaintiff's economic relationship at all relevant times.

45. Defendants knew or should have known that this relationship would be disrupted if they failed to act with reasonable care.

46. Defendants failed to act with reasonable care and engaged in wrongful conduct through their tortious interference which disrupted the relationships between Plaintiff.

47. Defendants' wrongful was a substantial factor in causing Plaintiff to suffer damages.

48. As a direct and legal result of Defendants' intentional acts that disrupted Plaintiff's continuing and prospective economic relationships with its clients, Plaintiff has suffered actual and consequential damages, including the loss of business, business opportunities, revenues, goodwill, and profits, and Plaintiff will continue to suffer similar losses after the filing of the complaint. Plaintiff has not yet calculated or ascertained its damages, however, those damages far exceed the $25,000 jurisdictional minimum of this Court.

49. Plaintiff is informed and believes and based thereon allege that in doing the acts

identified above, Defendants were guilty of oppression, fraud, and malice. As a result of this misconduct, Plaintiff is entitled to recover damages for the sake of example and by way of punishing Defendants in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### Breach of the Covenant of Good Faith and Fair Dealing

50. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

51. There is an implied covenant of good faith and fair dealing that requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement.

52. Defendants breached the implied covenant of good faith and fair dealing in their conduct that was willfully dishonest and egregious, and breached the covenant of good faith and fair dealing in the conduct of its bidding, and awarding the sale of the Property corruptly and influenced by bribes and favoritism, and perhaps discrimination.

53. As a result of Defendant's breach of the covenant of good faith and fair dealing, SOCC has been damaged.

54. Defendant is accordingly liable to SOCC for breach of implied covenant of good faith and fair dealing.

55. SOCC seeks an injunction ordering Defendant to comply with the obligations of the contract entered into by Defendant and for actual damages.

### FORTH CAUSE OF ACTION

### Racketeer Influenced and Corrupt Organization Act (18 U.S.C. 1982(c) and 1964(a))

56. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

57. Each use of the telephone, mail, or internet by Defendants to carry out their illicit scheme, which resulted in manipulation of the bidding process conducted by the City and others, constitute a single violation of the federal Wire Fraud statute, 18 U.S.C. § 1343:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

58. Upon information and belief, Defendants used the telephone regularly in executing their illicit scheme. Each use of the telephone to advance the scheme constitute a single act of wire fraud. Wire fraud is a racketeering act as defined under 18 U.S.C. 1961(1).

59. Defendants engaged in scheme to have Fox Luggage submit non-competitive and "rigged" bids to obtain sale of Property owned by the City.

60. Throughout this entire period, Defendants used the bidding mechanisms for the public sales of property in order to implement and further their scheme. By having Fox Luggage submit rigged bids, Defendants participated in the conduct of the enterprise—i.e. the bidding process established the City.

61. In having Fox Luggage submit rigged bids, Defendants engaged in a pattern of racketeering activity, in that they committed two or more acts of wire fraud by (1) using telephones prior to the bid, and (2) using the internet and thus the wires or the mail to submit "rigged" bids to the City.

62. As a result of the conduct of Defendants as described above, SOCC has sustained monetary damages.

63. Pursuant to 18 U.S.C. 1964(c), SOCC is entitled to finding in its favor on this count, an award of treble damages, and attorney's fees.

//

## FIFTH CAUSE OF ACTION

### Sherman Act §1, Unreasonable Restraint of Trade

64. Plaintiff hereby realleges and incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

65. Section 1 of the Sherman Act (15 U.S.C. §1) provides in relevant part:
> Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal…

66. Section 4 of the Clayton Act [15 U.S.C. §15(a)] provides in relevant part:
> ...any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found...without respect to the amount in controversy, and shall recover threefold damages by him sustained, and the cost of suit, including a reasonable attorney's fee

67. As a governmental agency/municipality, City of Industry was seeking to award the sale of the Property. While the City posted the Property for sale by public auction to be awarded to the highest bidder, the City covertly favored a bidder, Fox Luggage.

68. Upon information and belief, Fox Luggage used its influence and connections with and within City of Industry to cause the City to ignore or eliminate SOCC's competitive bid from consideration.

69. Upon information and belief, in an effort to eliminate SOCC's competitive bid for the Property, Fox Luggage provided gifts and other consideration give to a member of the City's bid evaluation committee.

70. Upon information and belief, the City and Fox Luggage, and one or more other persons, conspired to have a public bidding for the sale of the Property, but have clandestinely agreed to select Fox Luggage as the winning bidder and award the sales contract for the Property to Fox Luggage. The other bids were to serve as dummy bids to provide a facade of a fair and public bid and to cover up the inside dealing between the City and Fox Luggage.

71. The effort to have the dummy bid ignored was undertaken by the City and Fox Luggage, and one or more other persons, and designed to protect and further the said
72. conspiracy, to interfere with any competition.
73. Upon information and belief, in inducing, manipulating or requiring one or more buyers other than SOCC to engage in dummy bidding, to reveal and discuss proposals and bids of other buyers, in using information obtained from other buyers, the City and Fox Luggage were engaged in collusion, manipulation and rigging bids for the sale of the Property in a manner which was unlawful and which violated Section 1 of the Sherman Act and Section 4 of the Clayton Act.
74. As a result of the anti-competitive acts and unlawful collusion on the part of the City and Fox Luggage, and one or more other persons, SOCC was deprived of and lost its ability and opportunity to buy the Property.
75. As a result of the anti-competitive acts and unlawful collusion on the part of the City and Fox Luggage, and one or more other persons, SOCC suffered and is suffering damages.
76. SOCC is a person having "antitrust standing" pursuant to §4 of the Clayton Act both by virtue of an entity "injured in its business or property by reason of...(acts)...forbidden in the antitrust law" and by virtue of having suffered damage directly in connection with a necessary step taken by Defendants to restrain competition and of having suffered damages through the very means by which Defendants sought to restrain competition.
77. SOCC, as a competing bidder, was and is a person having "antitrust standing" pursuant to §4 of the Clayton Act because, inter alia, both its attempt to prosecute a competitive (and apparently winning) bid and the continuance of its business was thwarted by the Defendants in furtherance of preserving a conspiracy to harm competition.
78. SOCC's injury constitutes an "antitrust injury" in that it is attributable to an anticompetitive aspect of the bid-rigging practice under scrutiny and because at the same time SOCC's injury flows from the alleged harm to the market.
79. The damages complained of by SOCC were directly and proximately caused by Defendants in connection with the Defendants acts and scheme to restrain competition in

bidding to the City.

80. As a result of the aforesaid acts and actions of the Defendants in causing damage to SOCC, SOCC is entitled to a finding in its favor on this count, an award of treble damages and attorney's fees.

**WHEREFORE**, on its Causes of Action, SOCC requests the following relief:

A) Judgment enjoining the City from proceeding with the sale of Property to Fox Luggage or, alternatively, if the sale to Fox Luggage is consummated;

B) Judgment setting aside the County's sale of the Property to Fox;

C) Judgment for cost and such other relief at law or in equity that the Court deems appropriate.

DATED this 27th day of June, 2017

**INHOUSE CO. LAW FIRM**

By: _____
Alexander Chen, Esq.
Attorney for Plaintiff
Sincere Orient Commercial Corporation