James M. Casso (SBN 146423)
Matthew M. Gorman (SBN 214628)
**CASSO & SPARKS, LLP**
13200 Crossroads Pkwy. North, Suite 345
City of Industry, CA 91746
Phone: 626.269.2980 Office
E-Mail: jcasso@cassosparks.com

Attorneys for Defendant CITY OF
INDUSTRY, SUCCESSOR AGENCY
TO THE INDUSTRY URBAN-
DEVELOPMENT AGENCY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SINCERE ORIENT COMMERCIAL CORPORATION, a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY, a California unit of local government; FOX LUGGAGE, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 2:17-cv-04755-PSG-RAO<br>Hon. Philip S. Gutierrez<br><br>**DEFENDANT CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[FILED CONCURRENTLY WITH:<br><br>1. REQUEST FOR JUDICIAL NOTICE;<br>2. DECLARATION OF JAMES M. CASSO; AND<br>3. [PROPOSED] ORDER]<br><br>Date: January 22, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 6A |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT, on January 22, 2018, at 1:30 p.m., or as soon thereafter as this matter can be heard before the Honorable Philip S.

Gutierrez, in Courtroom 6A of the United States Courthouse for the Central District of California, Western Division, 312 N. Spring Street, Los Angeles, California, 90012, Defendant SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY (erroneously named as the "CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY"; hereafter referred-to alternatively as "**Defendant**" or the "**City**") will, and hereby does, move the Court pursuant to Rule 12(b)(6) and Rule 12(b)(7) of the Federal Rules of Civil Procedure for an order dismissing all claims against it as alleged in the First Amended Complaint filed by Plaintiff SINCERE ORIENT COMMERICAL CORPORATION (alternatively, "**Plaintiff**" or "**SOCC**") in this action, with prejudice.

This Motion is brought pursuant to Rules 12(b)(6), and 12(b)(7) of the Federal Rules of Civil Procedure, on the ground that:

1. All claims of Plaintiff SINCERE ORIENT COMMERICAL CORPORATION (alternatively, "**Plaintiff**" or "**SOCC**") fail to state a claim upon which relief can be granted, as there is no such entity known as the "CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY," as alleged by Plaintiff, and the First Amended Complaint fails to distinguish between the CITY OF INDUSTRY and the SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY, which are separate and distinct government entities;

2. All claims of Plaintiff fail due to Plaintiff's failure to join a party (namely, THE OVERSIGHT BOARD OF THE SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY) under Rule 19 of the Federal Rules of Civil Procedure;

3. Plaintiff's first cause of action against Defendant to "Enjoin or Set Aside Unlawful Sale of Public Property" fails to state a claim upon which relief can be granted;

4. Plaintiff's second cause of action against Defendant for fraud fails to state a claim upon which relief can be granted and is barred against Defendant, which is immune from liability pursuant to California Government Code Section 818.8;

5. Plaintiff's third cause of action against Defendant for violation of RICO (18 U.S.C. § 1982(c) and 1964(a)) fails to state a claim upon which relief can be granted and is barred against Defendant, which, as a government entity, is incapable of forming the requisite malicious intent required to support RICO claims;

6. Plaintiff's fourth cause of action against Defendant for violation of the Sherman Act and Clayton Act fails to state a claim upon which relief can be granted and is barred against Defendant pursuant to the State Action Immunity Doctrine and the Local Government Antitrust Act of 1984;

7. Plaintiff's fifth cause of action against Defendant for violation of California Business & Professions Code Section 17200, *et seq.*, fails to state a claim upon which relief can be granted and is barred against Defendant, which, as a government entity, is not subject to claims under Business & Professions Code Section 17200, *et seq.*;

8. Plaintiff's sixth cause of action against Defendant for violation of the Cartwright Act fails to state a claim upon which relief can be granted and is barred against Defendant, which, as a government entity, is not subject to claims under the Cartwright Act; and

9. Plaintiff's seventh cause of action against Defendant for tortious interference with contract fails to state a claim upon which relief can be granted and is barred against Defendant, which is immune from liability pursuant to California Government Code Section 818.8.

This Motion is made following the conferences of counsel pursuant to Local Rule 7-3, which took place on November 8, 2017 and November 16, 2017, more than

seven days prior to the last day for filing the Motion.[1]  Notwithstanding the foregoing meet-and-confer efforts, the parties were unable to reach a resolution of the issues raised in this Motion.

This Motion is based on this Notice of Motion and Motion, upon the accompanying Memorandum of Points & Authorities, upon the Request for Judicial Notice and accompanying materials filed concurrently herewith, upon the Declaration of James M. Casso filed concurrently herewith, upon the pleadings and papers filed in this action, and upon such further argument and matters as may be offered at the time of the hearing on this Motion.

Respectfully submitted,

Dated:  November 27, 2017

**CASSO & SPARKS, LLP**

By: */s/ James M. Casso*
JAMES M. CASSO
*Attorneys for Defendant* SUCCESSOR
AGENCY TO THE INDUSTRY
URBAN-DEVELOPMENT AGENCY
E-mail:  jcasso@cassosparks.com

---

[1] Meet-and-confer efforts included telephonic and written communications by counsel for the City with counsel for SOCC regarding the City's contentions concerning SOCC's First Amended Complaint on several occasions prior to November 8, 2017.   Counsel for the City and SOCC met-and-conferred telephonically on November 8 and 16, 2017, which included in depth discussion of the facts and law to be raised by the City's Motion to Dismiss, and options for resolution of perceived deficiencies in SOCC's First Amended Complaint.

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................2

LEGAL STANDARD.....................................................................................3

ARGUMENT ..................................................................................................3

    I.   THE COMPLAINT IS INHERENTLY DEFECTIVE BECAUSE IT ERRONEOUSLY DEFINES THE "CITY" ...............................................3

    II.  SOCC'S FIRST CAUSE OF ACTION TO ENJOIN OR SET ASIDE UNLAWFUL SALE OF PUBLIC PROPERTY IS DEFECIENT ........6

        A. SOCC States No Statutory Or Other Basis For Its Claim That Sale Of The Subject Property To Fox Luggage Was Unlawful ...............6

        B. Assuming SOCC Intended To Allege That The Sale Violated The Redevelopment Dissolution Act, Such Claim Is Not Valid.............7

        C. SOCC's Allegations Conflict With The Requirements Of Section 34177(e) Of The California Health & Safety Code ........................10

    III.  SOCC'S CLAIMS SHOULD BE DISMISSED BECAUSE IT FAILS TO NAME THE OVERSIGHT BOARD AS A NECESSARY DEFENDANT ................................................................................... 11

    IV.  THE SECOND CAUSE OF ACTION FOR FRAUD FAILS .......... 12

        A. The City Is Immune From SOCC's Fraud Claim Under Section 818.8 Of The California Government Code.......................................12

        B. SOCC Fails To Plead Fraud With Particularity And Does Not Allege All Elements Required To Maintain This Cause Of Action ...................................................................................................14

    V. THE THIRD CAUSE OF ACTION FOR RICO VIOLATION SHOULD BE DISMISSED.................................................................. 16

        A. RICO Causes Of Action Must Be Pleaded With Particularity ......16

        B. SOCC Cannot Maintain RICO Claims Against The City Because Public Agencies Lack Capacity To Form Malicious Intent...........17

    VI.  THE FOURTH CAUSE OF ACTION UNDER THE SHERMAN ACT AND CLAYTON ACT SHOULD BE DISMISSED .............. 18

        A. The City Is Immune Under The State Action Immunity Doctrine ...................................................................................................18

        B. The Local Government Antitrust Act Of 1984 Applies Here........20

VII.   THE FIFTH CAUSE OF ACTION UNDER THE CALIFORNIA
       UNFAIR COMPETITION LAW SHOULD BE DISMISSED
       BECAUSE PUBLIC ENTITIES ARE BEYOND THE SCOPE OF
       THAT LAW ........................................................................................ 21

VIII.  THE SIXTH CAUSE OF ACTION SHOULD BE DISMISSED
       BECAUSE THE CITY IS A PUBLIC ENTITY NOT SUBJECT TO
       LIABILITY UNDER THE CARTWRIGHT ACT ............................ 22

IX.    THE SEVENTH CAUSE OF ACTION FOR TORTIOUS
       INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED
       ................................................................................................................ 23

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Ambrosia Coal & Const. Co. v. Pages Morales*
482 F.3d 1309 (11th Cir.2007)......................................................................... 16

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...........................................................................................3

*Bly–Magee v. California*
236 F.3d 1014 (9th Cir. 2001)........................................................................ 14

*Boone v. Redevelopment Agency of City of San Jose*
841 F.2d 886 (9th Cir. 1988)..................................................................... 18, 20

*Borsellino v. Goldman Sachs Group, Inc.*
477 F.3d 502 (7th Cir. 2007).......................................................................... 14

*Cervantes v. Countrywide Home Loans, Inc*
656 F.3d 1034 (9th Cir. 2011) ..........................................................................3

*City of Columbia v. Omni Outdoor Advertising, Inc.*
499 U.S. 365 (1991) ........................................................................................ 20

*Community Communications Co. v. City of Boulder*
455 U.S. 40 (1982) .......................................................................................... 18

*Cooper v. Pickett*
137 F.3d 616 (9th Cir. 1997) .......................................................................... 14

*County of Tuolumne v. Sonora Community Hosp.*
236 F.3d 1148 (9th Cir. 2001)......................................................................... 22

*Daniel v. Am. Bd. of Emergency Med.*
988 F.Supp. 127 (W.D. N.Y. 1997) ................................................................ 21

*Desaigoudar v. Meyerecord*
223 F.3d 1020 (9th Cir. 2000).......................................................................... 14

*Henson v. CSC Credit Services*
29 F.3d 280, 284 (7th Cir. 1994).......................................................................3

*Horisons Unlimited v. Santa Cruz-Monterey-Merced Managed Medical Care Comm'n*
2014 WL 3342565 (E.D. Cal., July 2, 2014,
No. 1:14-CV-00123-LJO-MJ)........................................................................ 20

*In re Colonial Mortg. Bankers Corp.*
324 F.3d 12 (1st Cir. 2003) ...............................................................................3

*Jensen Enterprises, Inc. v. Oldcastle Precast Inc.*
2009 WL 440492, at *8 (N.D. Cal., Feb. 23, 2009, No. C 06-247 SI),
aff'd (9th Cir. 2010) 375 Fed.Appx. 730........................................................ 24

*Kearns v. Ford Motor Co.*
  567 F.3d 1120 (9th Cir. 2009) .................................................... 14

*Kern-Tulare Water Dist. v. City of Bakersfield*
  828 F.2d 514 (9th Cir. 1987) ...................................................... 19

*Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*
  940 F.2d 397 (9th Cir. 1991) ...................................................... 17

*Llewellyn v. Crothers*
  765 F.2d 769 (9th Cir. 1985) ...................................................... 20

*Lopex v. Dean Witter Reynolds, Inc.*
  591 F.Supp. 581 (N.D. Cal. 1984)
  *aff'd* 805 F.2d 880 (9th Cir. 1986) ............................................ 16

*Mostowfi v. i2 Telecom Int'l, Inc.*
  269 F. App'x 621 (9th Cir. 2008) ............................................... 16

*O'Connor v. Uber Technologies, Inc.*
  2013 WL 6354534, at *13 (N.D. Cal., Dec. 5, 2013,
  No. C-13-3826 EMC) ............................................................... 24

*Outdoor Media Group, Inc. v. City of Beaumont*
  (9th Cir. 2007) 506 F.3d 895 ...................................................... 3

*Palm Springs Med. Clinic, Inc. v. Desert Hosp.*
  628 F.Supp. 454 (C.D. Cal. 1986) ............................................. 21

*Parker v. Brown*
  317 U.S. 341 (1943) ................................................................. 18

*Piping Rock Partners, Inc. v. David Lerner Associates, Inc.*
  (N.D. Cal. 2013) 946 F.Supp.2d 957
  *aff'd* (9th Cir. 2015) 609 Fed.Appx. 497 .................................. 23

*Schmidt v. Fleet Bank*
  1998 WL 47827, *5 (SDNY Feb. 4, 1998) ................................... 16

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*
  806 F.2d 1393 (9th Cir. 1986) .................................................... 16

*Sherwin-Williams Company v. Henry*
  2014 WL 3909174, at *3 (N.D. Cal., Aug. 8, 2014,
  No. C-14-02292 DMR) ............................................................. 23

*Skilstaf, Inc. v. CVS Caremark Corp.*
  669 F.3d 1005 ......................................................................... 3

*Swartz v. KPMG LLP*
  476 F.3d 756 (9th Cir.2007) ....................................................... 3

*Thillens, Inc. v. Fryzel*
  712 F.Supp. 1319 (N.D. Ill. 1989) ............................................. 20

*Town of Hallie v. City of Eau Claire*
   471 U.S. 34 (1985) ....................................................................... 18

*TYR Sport, Inc. v. Warnaco Swimwear, Inc.*
   709 F. Supp. 2d 821 (C.D. Cal. 2010) ......................................... 22

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*
   360 F.3d 220 (1st Cir. 2004) ........................................................ 15

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ..................................................... 16

*Wool v. Tandem Computers Inc.*
   818 F.2d 1433 (9th Cir. 1987) ..................................................... 15


**State Cases**

*Authority for California Cities Excess Liability v. City of Los Angeles*
   136 Cal.App.4th 1207 (Cal. Ct. App. 2006) ............................... 23

*Cal. Medical Ass'n, Inc. v. Regents of University of California*
   79 Cal.App.4th 542 (Cal. Ct. App. 2000) ................................... 21

*Cal. Redevelopment Ass'n v. Matosantos*
   53 Cal.4th 231 (Cal. 2011) ........................................................... 4

*City of Azusa v. Cohen*
   238 Cal.App.4th 619 (Cal. Ct. App. 2015) ................................... 8

*City of Burlingame v. San Mateo County*
   103 Cal.App.2d 885 (Cal. Ct. App. 1951) ..................................... 5

*Cochran v. Herzog Engraving Co.*
   155 Cal.App.3d 405 (Cal. Ct. App. 1984) .............................. 12, 13

*Emeryville v. Cohen*
   233 Cal.App.4th 293 (Cal. Ct. App. 2015) ................................... 8

*Harshbarger v. City of Colton*
   197 Cal.App.3d 1335 (Cal. Ct. App. 1988) ................................ 12

*In re Sanitary Board of East Fruitvale Sanitary District*
   158 Cal. 453 (Cal. 1910) .............................................................. 5

*Lazar v. Superior Court*
   12 Cal.4th 631 (Cal. 1996) .......................................................... 14

*Pacific Architects Collaborative v. State of Cal.*
   100 Cal.App.3d 110 (Cal. Ct. App. 1979) .................................. 13

*Pacific Gas & Elec. Co. v. Bear Stearns & Co.*
   50 Cal.3d 1118 (1990) ................................................................. 23

*Pacific States Enterprises, Inc. v. City of Coachella*
  13 Cal.App.4th 1414 (Cal. Ct. App. 1993) ......................................5

*Penn v. City of San Diego*
  188 Cal.App.3d 636 (Cal. Ct. App. 1987) ....................................... 22

*People ex rel. Freitas v. City and County of San Francisco*
  92 Cal.App.3d 913 (Cal. Ct. App. 1979) ....................................... 22

*People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.*
  125 Cal.App.4th 871 (Cal. Ct. App. 2005) ..................................... 22

*Universal By–Products, Inc. v. City of Modesto*
  43 Cal.App.3d 145 (Cal. Ct. App. 1974) .................................. 12, 13

*Widdows v. Koch*
  263 Cal.App.2d 228 (Cal. Ct. App. 1968). ..................................... 22

*Wildlife Alive v. Chickering*
  18 Cal.3d 190 (Cal. 1976) ............................................................ 11

*Younger v. Jensen*
  26 Cal.3d 397 (Cal. 1980) ........................................................... 22


**Federal Statutes**

15 U.S.C. § 34 ............................................................................... 20

15 U.S.C. § 34(1)(A) ...................................................................... 20

15 U.S.C. § 34(1)(B) ...................................................................... 20

15 U.S.C. §§ 34-36 ........................................................................ 20


**State Statutes**

California Business & Professions Code § 16702 ........................ 22

California Business & Professions Code § 16720 ........................ 22

California Business & Professions Code § 16700 ........................ 22

California Business & Professions Code § 17200 ........................ 21

California Government Code § 815.2(b) ....................................... 13

California Government Code § 818.4 ............................................ 13

California Government Code § 818.8 ................................. 12, 13, 23

California Government Code § 820.2 ............................................ 13

California Government Code § 34101 ...............................................4

California Health & Safety Code § 34170 .......................................4

California Health & Safety Code § 34171(h) ...................................8

California Health & Safety Code § 34171(j) ....................................5

California Health & Safety Code § 34171(k) ...................................5

California Health & Safety Code § 34172(b) ...................................4

California Health & Safety Code § 34173 .......................................4

California Health & Safety Code § 34173(a) .............................. 5, 20

California Health & Safety Code § 34177(e) ................ 7, 8, 10, 11, 19

California Health & Safety Code § 34177(h) ...................................8

California Health & Safety Code § 34179 (a) ..................................8

California Health & Safety Code § 34179(h)(2) ..............................9

California Health & Safety Code § 34179 (i) ..................................8

California Health & Safety Code § 34180(g) ...................................8

California Health & Safety Code § 34181(f) ....................................9

California Health & Safety Code § 34191.5 .....................................8

California Health & Safety Code § 34191.5(b) .................................8

**Rules**

Federal Rule of Civil Procedure Rule 9(b) ........................... 14, 15, 16

Federal Rule of Civil Procedure Rule 12(b)(7) ........................... 11

**State Constitutional Provisions**

California Constitution Article XI, § 2 ...........................................4

California Constitution Article XI, § 3 ...........................................4

California Constitution Article XI, § 5 ...........................................4

California Constitution Article XI, § 6 ...........................................4

**Other Authorities**

City of Industry City Charter Article I, § 100 ..................................................4

# INTRODUCTION

SOCC's First Amended Complaint improperly seeks to hold a public entity liable for a host of claims which should never have been brought. Foundationally, SOCC has brought its case against a non-existent entity identified as the "CITY OF INDUSTRY, SUCCESSOR AGENCY TO THE URBAN-DEVELOPMENT AGENCY" – but no such entity exists. While there is a "City of Industry," and there is a "Successor Agency to the Industry Urban Development Agency," the two entities are separate public agencies and SOCC improperly conflates their identities. From even this most basic level, SOCC fails to raise valid claims.

This defect ripples throughout the Complaint, and is mirrored by the paradox that, while SOCC makes outlandish claims of an illicit scheme of bribery and kickbacks, not one natural person is identified in its Complaint and not one of the claims that it raises may properly be pinned onto a public entity. Further, in bringing its sensationalized claims against a public entity (albeit, a non-existent one), SOCC seeks to pin liability where it does not belong: on a government entity which is incapable of forming the malice and nefarious motive alleged by SOCC, rather than on the specific individuals who (allegedly) engaged in the corrupt practices that SOCC complains of.

If SOCC wishes to attack a public entity by claiming that it engaged in an unlawful conspiracy, it cannot hide behind inaccurate allegations and vague assertions which obscure the crux of who SOCC claims to have been corrupt and how the alleged corrupt acts occurred. Further, it cannot make its claims against an entity which does not exist, and it cannot make its claims without addressing the fact that the entities relevant to SOCC's allegations operate in the context of a highly complex and regulated body of law arising out of California's redevelopment dissolution. SOCC makes no mention of the fact that the alleged corrupt acts occurred in the context of overseeing agencies and other "checks-and-balances" which render its allegations highly implausible and, at the very least, incapable of

surviving even cursory judicial scrutiny. SOCC's claims fail on multiple levels, and its First Amended Complaint should be dismissed.

## BACKGROUND[2]

As alleged by SOCC, this action arises from a public bidding process undertaken by the "City of Industry, Successor Agency to the Urban-Development Agency" (the "**City**"),[3] whereby the City's real property at 125 Orange Avenue in the City of Industry (the "**Subject Property**") was sold to defendant Fox Luggage, Inc. ("**Fox Luggage**"). SOCC alleges that, under California law, the City was required to sell the Subject Property to the highest bidder [1AC ¶¶ 30-38], but the City engaged in a "rigged bidding process" that was "influenced by graft [so that] it would actually award the sale of the Subject Property to a pre-selected bidder," Fox Luggage. [1AC ¶ 44.] SOCC alleges that "the City has been improperly influenced in awarding the sale to Fox Luggage because of improper dealings, collusion and/or anti-competitive agreements…." [1AC ¶ 32.]

SOCC alleges that it was the highest bidder for the Subject Property and the City should have awarded the sale to it. [1AC ¶¶ 29, 49.] After a series of communications to the City [1AC ¶¶ 31-36], SOCC filed the instant lawsuit stating causes of action which challenge the City's sale of the Subject Property to Fox Luggage under theories of "Unlawful Sale of Public Subject Property," fraud, RICO, Sherman Act and Clayton Act violation, unfair competition, and tortious interference with contract.

The City vigorously disputes SOCC's allegations and its claims which, as explained herein, suffer from numerous deficiencies and should be dismissed.

---

[2] The facts summarized here are taken from the allegations of SOCC's First Amended Complaint, as required at this stage of the pleadings, and are vigorously disputed.

[3] SOCC's identification of the City throughout its First Amended Complaint is improper. [*See* pages 3 through 6 of this brief, *ante*.] This brief uses SOCC's reference to the "City" for the sake of consistency with SOCC's allegations only and not as a concession that SOCC has properly identified any party.

**LEGAL STANDARD**

On a motion to dismiss, the Court must accept as true those factual allegations that the plaintiff has properly-pleaded and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While courts "generally consider only allegations contained in the pleadings," they also consider "exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.2007); *Outdoor Media Group, Inc. v. City of Beaumont* (9th Cir. 2007) 506 F.3d 895, 899-900. A matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016, fn. 9 (9th Cir. 2012); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16, 19 (1st Cir. 2003); *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).

A court should grant a defendant's motion to dismiss when "the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "A complaint that alleges only 'labels and conclusions' or a 'formulaic recitation of the elements of the cause of action' will not survive dismissal." *Id.* at 1041 (*quoting Twombly, supra*, 550 U.S. at 555).

**ARGUMENT**

**I.   THE COMPLAINT IS INHERENTLY DEFECTIVE BECAUSE IT ERRONEOUSLY DEFINES THE "CITY"**

SOCC errs in naming the "City of Industry, Successor Agency to the Urban-Development Agency" as a defendant. [1AC ¶ 5.] There is no entity by this name, which is an improper hybridization of two separate and distinct entities:

1.   The "CITY OF INDUSTRY" (the **"City of Industry"**) is a California municipal corporation organized as a charter city pursuant to the

California Constitution and enabling enactments. Cal. Const. art. XI, § 6; *see also* Cal. Const. art. XI, §§ 2, 3, 5; Cal. Gov't Code § 34101; City of Industry City Charter Art. I, § 100 [copy at Declaration of James M. Casso ("**Casso Decl.**") Ex. A, p. 1 ("The City of Industry … shall continue to be a municipal corporation….")]; *see also* Request for Judicial Notice ("**RJN**") Fact 1.a.

2. In contrast, the "SUCCESSOR AGENCY TO THE INDUSTRY URBAN-DEVELOPMENT AGENCY" (the "**Successor Agency**") is a separate and distinct type of public entity known as a redevelopment "successor agency" formed pursuant to the Redevelopment Dissolution Law adopted by California's Legislature in 2011. *See* Cal. Cal. Health & Safety Code § 34170, *et seq.* (the "**Redevelopment Dissolution Law**" [summarized in *Cal. Redevelopment Ass'n v. Matosantos*, 53 Cal.4th 231 (Cal. 2011)]); *see also* RJN Fact 1.b.; Casso Decl. ¶ 5 and Ex. B thereto. Under the Redevelopment Dissolution Law, all redevelopment agencies in the State of California were dissolved and, effective February 1, 2012, replaced by successor agencies, which succeeded to the interests held by their respective former redevelopment agencies. Cal. Health & Safety Code §§ 34172(b), 34173. The establishment of successor agencies is codified at Section 34173 of the California Health & Safety Code. The Successor Agency at-issue in this action is the successor to the former INDUSTRY URBAN-DEVELOPMENT AGENCY ("**IUDA**"), which was the redevelopment agency operating within the geographic area of the City of Industry prior to dissolution. [RJN Fact 1.e.; Casso Decl. ¶ 4.] Upon dissolution pursuant to the Redevelopment Dissolution Act, the IUDA ceased to exist and was succeeded by the Successor Agency, which presently acts pursuant to the strictures of the Redevelopment Dissolution Law. [RJN Fact 1.e.; Casso Decl. ¶ 4.]

///

///

When they existed, redevelopment agencies (including the IUDA) were recognized as distinct public entities existing as subdivisions of the State, separate from cities, which are not State subdivisions, but municipal corporations. *See, e.g.,* *Pacific States Enterprises, Inc. v. City of Coachella*, 13 Cal.App.4th 1414, 1424-1425 (Cal. Ct. App. 1993). Under the Redevelopment Dissolution Law, successor agencies (including the Successor Agency here) are separate legal entities and not part of any city. Cal. Health & Safety Code § 34173(a) (establishing "successor agencies" as succeeding "to the former redevelopment agencies"); Cal. Health & Safety Code § 34171(j), (k) (further defining "successor agencies" as an "entity [succeeding] to the former redevelopment agency" and defining "cities" and other entities separately as "taxing entities"); *see also City of Burlingame v. San Mateo County*, 103 Cal.App.2d 885, 888 (Cal. Ct. App. 1951) ("'there cannot be at the same time, within the same territory, two distinct municipal corporations, exercising the same powers, jurisdiction, and privileges'....."; *quoting In re Sanitary Board of East Fruitvale Sanitary District*, 158 Cal. 453, 457 (Cal. 1910)).

By identifying the "City" as the "City of Industry, Successor Agency to the Urban-Development Agency" [1AC ¶ 5], SOCC improperly conflates the differences between the City of Industry and the Successor Agency, resulting in a foundationally incorrect and improper complaint, as there is no such entity, confusing most of the facts alleged by SOCC. [RJN Fact 1.d.; Casso Decl. ¶ 6.] For example:

- SOCC alleges that "[t]he City owned [the Subject Property]" [1AC ¶ 7], but the City of Industry has never owned the Subject Property; rather, the Subject Property was owned by the Successor Agency [RJN Fact 2.b.; Casso Decl. ¶ 8];

- SOCC alleges that "the City ratified the purchase agreement with a memorandum (the "Memorandum") referring to the Fox Luggage bid" [1AC ¶ 19], but the City of Industry has had no involvement with such action and the alleged "Memorandum" is an agenda for a meeting of the Successor Agency Governing Board (not the City of Industry or its City Council), whereby the Successor Agency

1  (not the City of Industry) considered the Fox Luggage bid [1AC Ex. K; *see also* RJN
2  Fact 1.e. and Casso Decl. ¶ 12];

3       • SOCC alleges that "the City provided a fully executed purchase
4  agreement between the City and Fox Luggage for escrow of the Subject Property"
5  [1AC ¶ 22], and attaches a copy of the purported purchase agreement [1AC Ex. M];
6  but the City of Industry did not provide any purchase agreement and the attached
7  document is executed by the Successor Agency and Fox Luggage, not the City of
8  Industry.

9       Throughout its complaint, SOCC repeatedly alleges that "the City" committed
10  the various violations which comprise its causes of action in this case. But identifying
11  the "City" in this manner is improper, confusing, and erroneous, since there is no such
12  entity as defined in the complaint and it fails to distinguish or discern whether they are
13  against the City of Industry or the Successor Agency.

14      This Court may take judicial notice of the fact that the City of Industry is a
15  separate legal entity distinct from the Successor Agency. [RJN Fact 1.c.] As such, the
16  vast weight of SOCC's complaint is improperly pleaded because it conflates those
17  two entities and fails to discern (and allege) their distinct status. Without proper
18  pleading, SOCC states no claim against the City of Industry or the Successor Agency,
19  and its complaint against the "City"[4] should be dismissed.

20  **II.  SOCC'S FIRST CAUSE OF ACTION TO ENJOIN OR SET ASIDE**
21  **UNLAWFUL SALE OF PUBLIC PROPERTY IS DEFECIENT**

22  **A.  SOCC States No Statutory Or Other Basis For Its Claim That Sale**
23  **Of The Subject Property To Fox Luggage Was Unlawful**

24      SOCC's first cause of action alleges that the City's sale of the Subject Property
25  to Fox Luggage "is unlawful and in violation of California law, which requires that

26

27  ---
[4] Because SOCC utilizes a divergent definition for the "City" in its complaint [1AC
28  ¶ 5, *et seq.*], that term is likewise used in this brief hereafter for the sake of
consistency with its use in SOCC's complaint.

disposition of any real property owned by the City be in exchange for a clear, present benefit that reflects fair market value." [1AC ¶ 38.] In so alleging, SOCC fails to state the provision of California law which purportedly requires sale at "fair market value," and ignores the fact (summarized below) that the Subject Property here was *not* subject to any such requirement, but was instead subject to the sale requirements provided in the Redevelopment Dissolution Law at California Health & Safety Code Section 34177(e). [*See* pp. 10-11, *ante*.]

To state a claim that the "City's" sale of the Subject Property was "in violation of California law," SOCC must, at a minimum, allege what California law was violated. Its failure to do so renders its claim vague and implicates the due process rights of the City of Industry and the Successor Agency, as they are forced to defend against accusations and alleged violations of law which are unstated and unknown. As such, SOCC's first cause of action is fundamentally defective and should be dismissed.

**B.**   **Assuming SOCC Intended To Allege That The Sale Violated The Redevelopment Dissolution Act, Such Claim Is Not Valid**

Although it accuses the "City" as having improperly sold the Subject Property to Fox Luggage, SOCC ignores the fact that *a successor agency does not have the final say over whether a sale of property should be made, or what the terms of a sale should be*. Rather, under the Redevelopment Dissolution Law, "oversight boards" are established for each successor agency [Cal. Health & Safety Code § 34179], and a sale of property from the successor agency to any other party is subject to oversight and approval by the successor agency's oversight board. Cal. Health & Safety Code § 34177(e).

Under the Redevelopment Dissolution Law, "[e]ach successor agency shall have an oversight board composed of seven members," which are appointed from "the county board of supervisors," the "mayor for the city that formed the redevelopment agency," the "largest special district ... in the territorial jurisdiction

of the former redevelopment agency," the "county superintendent of education," and other authorities. Cal. Health & Safety Code § 34179(a). Such oversight boards have several duties in overseeing the winding-down of the former redevelopment agencies which they oversee, and owe a fiduciary duty in overseeing the assets, obligations and activities of their respective successor agencies. *See, e.g., City of Azusa v. Cohen*, 238 Cal.App.4th 619, 623-624 (Cal. Ct. App. 2015) (*citing* Cal. Health & Safety Code §§ 34177(h), 34179(a), (i), 34180(g), 34171(h); *Emeryville v. Cohen*, 233 Cal.App.4th 293, 298-299 (Cal. Ct. App. 2015)).

Among the duties that oversight boards are responsible for is the duty to approve the sale of assets and properties of the successor agencies which the oversee. Cal. Health & Safety Code § 34177(e) (permitting successor agency to "[d]ispose of assets and properties of the former redevelopment agency" only "*as directed by the oversight board*."; emphasis added).

Further, under the Redevelopment Dissolution Law, property owned by a successor agency is subject to long-range planning, and must be listed on the successor agency's long-range property management plan ("**LRPMP**"), which is established to guide the use and disposition of former redevelopment agency properties. Cal. Health & Safety Code § 34191.5. Each successor agency's LRPMP is likewise submitted to, and must be approved by, its respective oversight board, and is subsequently submitted to the State Department of Finance ("**DOF**") for final approval. Cal. Health & Safety Code § 34191.5(b). As such, a complex and thorough hierarchy of oversight weighs over successor agencies and seeks to ensure that assets and properties of the former redevelopment agencies are properly managed and disposed in the winding-down of those former agencies.

This statutory hierarchy applies to the Successor Agency here and was implemented in the sale of the Subject Property to Fox Luggage:

1. The Successor Agency was formed pursuant to the Redevelopment Dissolution Law and assumed ownership of the Subject Property from the former

Industry Urban Development Agency [RJN Fact 1.b.; Casso Decl. ¶¶ 4, 8];

2. The Successor Agency listed the Subject Property on its LRPMP, which was approved both by its oversight board (the "**Oversight Board**") and by DOF [1AC ¶ 20 and Ex.'s E and L; *see also* RJN Facts 1.c. and 1.d.; Casso Decl. ¶¶ 9-11 and Ex.'s D, E, and F];

3. In proposing to sell the Subject Property to Fox Luggage, the Successor Agency approved the sale at its public meeting, and submitted such approval to the Oversight Board for consideration [1AC ¶ 19 and Ex. K; Casso Decl. ¶ 12];

4. The Oversight Board considered approval of the sale to Fox Luggage and approved the sale at a noticed and open meeting [1AC ¶ 19 and Ex. K; Casso Decl. ¶ 13 and Ex. G];

5. Notice of the approved sale was submitted to DOF (as per Cal. Health & Safety Code §§ 34179(h)(2) and 34181(f), which did not object to the sale [RJN Fact 2.g.; Casso Decl. ¶ 14];

6. The sale was consummated by execution of a purchase agreement dated August 2, 2016 between the Successor Agency and Fox Luggage [1AC ¶ 21 and Ex. M; RJN Fact 2.h.]; and

7. Title to the Subject Property was thereafter conveyed by the Successor Agency to Fox Luggage's designee, in conformance with an amendment to the purchase agreement [RJN Facts 2.i. and 2.j.; Casso Decl. ¶¶ 15-16 and Ex.'s H, I].

Notably, SOCC ***does*** allege that "the Oversight Board of The Successor Agency to the Industry Urban-Development Agency met and ratified the Successor Agency's resolution for sale of the Subject Property to Fox Luggage." [1AC ¶ 20.] In so alleging, SOCC refers to its Exhibit L, which is the agenda for the Oversight Board's August 2, 2016 meeting, item 5.5 of which was a Resolution whereby the Oversight Board was "***approving and authorizing***" the sale of the Subject Property to Fox Luggage." [1AC Ex. L, p. 2 (emphasis added).] However, SOCC does not name the Oversight Board as a defendant to this action, nor does SOCC state allegations to

overcome the fact that the Oversight Board – not the City or Successor Agency – was the entity that gave ultimate approval for sale of the Subject Property to Fox Luggage.

SOCC must overcome the fact that the Oversight Board – not the City or Successor Agency – was the entity that gave final approval for the sale. At the very least, SOCC must allege why the City is responsible for the sale when, under both the Redevelopment Dissolution Law and the facts alleged by SOCC (noted above), the act of final approval was made by the Oversight Board.

### C.     SOCC's Allegations Conflict With The Requirements Of Section 34177(e) Of The California Health & Safety Code

To prevail on a claim that the City, Successor Agency, or Oversight Board's approval of the sale violated California because the sale must "reflect[ ] fair market value" [1AC at 9:7-8, 10-12], SOCC must also overcome the fact that the Redevelopment Dissolution Law does ***not*** require that the sale of successor agency properties be at "fair market value," to the "highest bidder," or for the "highest price." Rather, the provision which governs the sale of successor agency property is Section 34177(e) of the California Health & Safety Code, which provides that successor agencies shall, *inter alia*, "[d]ispose of assets and properties of the former redevelopment agency ***as directed by the oversight board***; ... in a manner aimed at ***maximizing value***." Cal. Health & Safety Code § 34177(e) (emphasis added).

By imposing a goal of "***maximizing value***," rather than "fair market value" or "highest price," the Legislature intended that successor agency properties need not be sold to the "highest bidder." Indeed, Section 34177(e) does not even mandate that properties be sold at any given price; rather, the Section provides only that sales be directed "***in a manner aimed***" at achieving a maximum value, evincing the Legislature's intent for how the property disposition process should be overseen rather than the actual sale price outcome of that process.

Canons of statutory construction require that meaning be given to the terms used by the Legislature in its enactments, and that use of a given term in statute operates to

exclude the inference of others. *See, e.g.*, *Wildlife Alive v. Chickering*, 18 Cal.3d 190, 195 (Cal. 1976) ("Under the familiar rule of construction, *expressio unius est exclusio alterius*, where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed."). Had the Legislature intended that successor agency properties be sold at a "fair market price," "maximum price," or to the "highest bidder," such terms would have been incorporated into Section 34177(e) to provide for this. The fact that the Legislature drafted Section 34177(e) to **exclude** such verbiage evinces its intent that disposition of successor agency properties **not** be subject to a "fair market value" or similar standard.

At the very least, SOCC has not alleged facts to address the standard for sale of successor agency property under Section 34177(e), nor any other foundational facts to overcome the standard under that Section, which does not require sale at a "fair market value" or to a "highest bidder." The lack of such allegations is fatal to SOCC's cause of action attacking sale of the Subject Property to Fox Luggage and warrants dismissal of that claim.

## III. SOCC'S CLAIMS SHOULD BE DISMISSED BECAUSE IT FAILS TO NAME THE OVERSIGHT BOARD AS A NECESSARY DEFENDANT

As explained above, the Subject Property could not be sold except "as directed by the oversight board." Cal. Health & Safety Code § 34177(e). While SOCC alleges that the Oversight Board "met and ratified the Successor Agency's resolution for sale of the Subject Property to Fox Luggage" [1AC ¶ 20], it does not state other allegations about the Oversight Board, nor does SOCC name the Oversight Board as a defendant.

Rule 12(b)(7) of the Federal Rules of Civil Procedure authorizes dismissal where a party fails to join parties to an action where their joinder is necessary. Such is the case as to the Oversight Board here, warranting dismissal.

/ / /

/ / /

# IV. THE SECOND CAUSE OF ACTION FOR FRAUD FAILS

## A. The City Is Immune From SOCC's Fraud Claim Under Section 818.8 Of The California Government Code

SOCC's second cause of action is for fraud, and alleges that the City undertook an unfair bidding process in determining a buyer for the Subject Property which harmed SOCC by the cost it incurred in submitting a bid and depriving it "a fair bidding process" whereby SOCC would have "obtain[ed] the Subject Property as the rightful, winning bidder." [1AC ¶ 49.] This claim fails because the City is immune from liability under Section 818.8 of the California Government Code.

Under California law, common law or judicially declared forms of liability for public entities has been abolished, and government tort liability must be based on statute. *Cochran v. Herzog Engraving Co.*, 155 Cal.App.3d 405, 409 (Cal. Ct. App. 1984). In particular, Section 818.8 of the California Government Code provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Cal. Gov't Code § 818.8. Section 818.8 has been interpreted in the context of other public entity immunities, and in the context of alleged fraud. In such contexts, California law is clear that public entities are immune from claims of fraud. *Harshbarger v. City of Colton*, 197 Cal.App.3d 1335, 1340-1341 (Cal. Ct. App. 1988) ("A public employee may be liable for actual fraud, but the public entity is wholly immune."); *Universal By–Products, Inc. v. City of Modesto*, 43 Cal.App.3d 145, 154 (Cal. Ct. App. 1974)).

In *Universal By–Products, Inc.*, the low-bidder on a city's competitive bidding process brought a cause of action for fraud and other claims against the city for rejecting all bids that were submitted. The court dismissed the fraud cause of action based on the immunity provided under Government Code Section 818.8. *Universal By–Products, Inc.*, 43 Cal.App.3d at 153-154. The court reasoned that Section 818.8 immunizes public entities from intentional misrepresentations of their employees,

and the alleged fraud (misrepresenting the legitimacy of the bidding process) fell within this scope. *Id.* at 154. The court also noted that the city would likewise be immune under other provisions, including those which cover exercises of discretion [Cal. Gov't Code §§ 820.2, 815.2(b)], and issuance and denial of licenses [Cal. Gov't Code § 818.4]. *Universal By-Products, Inc.* at 154-155.

Analogous facts are alleged by SOCC here, and warrant dismissal based on Section 818.8: SOCC alleges that the City "impliedly represented to Plaintiff SOCC (and to the public at large) that it would conduct a fair public bidding process" [1AC ¶ 42], and that "the City and specific individuals acting under the City's auspices … awarded the sale of the Subject Property to another bidder" due to the "personal greed of the City official involved in the deception and fraud … who gained personally from gifts and other secret consideration paid to them to influence their decisions as public officials" [1AC ¶¶ 43, 44]; but these allegations fall squarely within the scope of Section 818.8 and *Universal By-Products, Inc.* *See also Pacific Architects Collaborative v. State of Cal.*, 100 Cal.App.3d 110, 121 (Cal. Ct. App. 1979) ("Insofar as the decision not to award the contract was based on the exercise of discretion by the state employees, governmental immunity precludes the imposition of any liability based on a tort theory."). Even the damages sought by SOCC mirrors that sought in *Universal By-Products, Inc.* [*Cf Universal By-Products, Inc.* at 150 and 1AC ¶ 49.]

As stated in *Cochran v. Herzog Engraving Co.*, *supra*, 155 Cal.App.3d at 409: "[S]overeign immunity is the rule in California; governmental liability is limited to exceptions specifically set forth by statute." This principle applies to SOCC's fraud claim and warrants dismissal based on the City's immunity under Section 818.8 of the California Government Code.

///

///

///

**B.** **SOCC Fails To Plead Fraud With Particularity And Does Not Allege All Elements Required To Maintain This Cause Of Action**

Under California law, to state a claim for fraud a party must plead facts to sufficiently allege five elements: (1) a misrepresentation; (2) the speaker's knowledge of falsity; (3) the intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *See, e.g., Lazar v. Superior Court,* 12 Cal.4th 631, 638 (Cal. 1996). The pleading of such facts is subject to the heightened requirements of Federal Rule of Civil Procedure 9(b) ("**Rule 9(b)**"), which provides: "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) (emphasis added); *Desaigoudar v. Meyerecord,* 223 F.3d 1020, 1022-1023 (9th Cir. 2000). Rule 9(b) requires that that the circumstances constituting any alleged fraud must be pleaded "specific[ally] enough to give defendants notice of the *particular misconduct* ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009) (*citing Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir. 2001)) (emphasis added).

To meet this standard, assertions of fraud *must* be "accompanied by the who, what, when, where, and how of the misconduct alleged." *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997). This is required not just in making *claims* of fraud, but in the *allegations* for fraud. *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007).

The allegations by SOCC utterly fail to meet these standards. While SOCC alleges that the City "impliedly represented to Plaintiff SOCC ... that it would conduct a fair bidding process" [1AC ¶ 42], no particulars to substantiate this allegation are alleged and the allegation, itself, is wholly general. SOCC goes on to allege that "the City and the specific individuals acting under the City's auspices, influenced by graft and other dishonest motivations ..., awarded the sale of the Subject Property to another bidder" [1AC ¶ 43], but these are conclusory allegations

that fail to state the "who, what, when, where, and how" of the alleged "graft and other dishonest motivations." Indeed, SOCC does not identify who at the City was involved in the alleged graft, what its alleged improper subject was, who the other "specific individuals" were, when these individuals engaged in alleged nefarious conduct, and other particulars which are foundational to a plaintiff maintaining any claim for fraud.

Similar failings are evident in all other paragraphs stated by SOCC to allege fraud: SOCC alleges that the "City concealed from Plaintiff, the other bidders, and the public at large, that it had rigged the bidding process" [1AC at 10:10-12], but the identities of persons involved or even facts establishing "rigging" of the bidding process are not alleged. SOCC states that the alleged scheme was "motivated by the personal greed of the City officials involved in the deception and fraud" [1AC at 10:13-14], but fails to identify any City official. SOCC alleges that "gifts and other secret consideration [were] paid to them," but does not state who the alleged gifts and consideration were paid to, who paid them, when they were paid, and other particulars requires to satisfy the standard required by Rule 9(b).

If allegations of fraud are made on information and belief, a plaintiff must set forth the source of the information and the facts that are the reasons for the belief. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 226 (1st Cir. 2004). SOCC's complaint fails to meet these requirements, pleading, for example, "[o]n information and belief," that "the City has been improperly influenced in awarding the sale to Fox Luggage because of improper dealings, collusion and/or anti-competitive agreements," [1AC ¶ 32], while failing allege the source of the information and the facts that are the reasons for this belief, as required to satisfy the pleading mandate of Rule 9(b).

A plaintiff's failure to meet the pleading standards required of Rule 9(b) warrants dismissal of the complaint. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

1107-1108 (9th Cir. 2003). Because SOCC's fails to conform with Rule 9(b)'s particularity requirement, its fraud cause of action should be dismissed.

## V.   THE THIRD CAUSE OF ACTION FOR RICO VIOLATION SHOULD BE DISMISSED

### A.   RICO Causes Of Action Must Be Pleaded With Particularity

SOCC's third cause of action alleging violation of RICO is subject to the same particularity requirements of Rule 9(b) noted above and, as such, should be dismissed because it fails to meet Rule 9(b)'s standard. "Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity." *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007). To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Id.* at 1316-1317. SOCC's complaint fails to plead these allegations with particularity.

Indeed, Rule 9(b)'s particularity requirements have ***even greater urgency*** in RICO claims. Many courts have required that the complaint "allege facts that specify each defendant's connection to the alleged fraud" [*Schmidt v. Fleet Bank*, 1998 WL 47827, *5 (SDNY Feb. 4, 1998)], and have held that plaintiffs must plead RICO predicate acts with particularity with respect to each and every alleged defendant. *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-1401 (9th Cir. 1986); *Lopex v. Dean Witter Reynolds, Inc.*, 591 F.Supp. 581, 584 (N.D. Cal. 1984), *aff'd* 805 F.2d 880 (9th Cir. 1986). A plaintiff that bases its RICO claim on a mail or wire fraud scheme must allege the time, place, content of, and parties to the fraudulent communications, and must show that the plaintiff was deceived by those communications. *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 624 (9th Cir. 2008).

1    Here, SOCC suffers from the same failure to meet Rule 9(b)'s standard as its

2    fraud allegations: each of SOCC's RICO allegations is exceedingly general and none

3    allege the "who, what, when, where, and how," and other particulars mandated by

4    Rule 9(b)'s particularity standard. [*See* 1AC ¶¶ 53-56.] As such, SOCC's third cause

5    of action under RICO is deficient and should be dismissed.

6    **B.    SOCC Cannot Maintain RICO Claims Against The City Because**

7    **Public Agencies Lack Capacity To Form Malicious Intent**

8    The RICO claim must also be dismissed because it requires proof that the City

9    acted with malice and, as a public entity, the City is incapable of forming a malicious

10   intent, and is therefore not subject to RICO liability as a matter of law. This issue

11   was squarely addressed in *Lancaster Community Hosp. v. Antelope Valley Hosp.*

12   *Dist.*, 940 F.2d 397 (9th Cir. 1991), which concerned, *inter alia*, whether a plaintiff's

13   RICO claims could be maintained against public entity hospital districts. In

14   considering whether the districts could be subject to RICO claims, the Ninth Circuit

15   held that RICO claims must "fail because government entities are incapable of

16   forming a malicious intent," which is a predicate required for maintaining RICO

17   causes of action. *Id.* at 404.

18   It is beyond dispute that the City of Industry and the Successor Agency are

19   "government entities" to which the holding in *Lancaster Community Hosp.* applies.

20   [*See* pp. 3-5, *supra*.] Notwithstanding its erroneous naming of the City addressed

21   above [*Id.*], SOCC likewise alleges that the City is "a unit of local government that

22   is a body corporate and politic, and is a legal subdivision of the State of California."

23   [1AC ¶ 5.] As such, SOCC's RICO claim fails against the City as a matter of law

24   and should be dismissed.

25   / / /

26   / / /

27   / / /

28   / / /

# VI. THE FOURTH CAUSE OF ACTION UNDER THE SHERMAN ACT AND CLAYTON ACT SHOULD BE DISMISSED

## A. The City Is Immune Under The State Action Immunity Doctrine

In *Parker v. Brown*, 317 U.S. 341 (1943), the U.S. Supreme Court established the State Action Immunity Doctrine, which provides that the Sherman Act does not apply to actions of the states. *Id.* at 350-351. In *Community Communications Co. v. City of Boulder*, 455 U.S. 40 (1982), the high Court extended the State Action Immunity Doctrine (also known as "*Parker* immunity") to municipalities, and established that otherwise violative acts of a municipality are nevertheless shielded from liability under the Sherman Act if the municipality acted under a "clearly articulated and affirmatively expressed" state policy. *Id.* at 51-52. The Doctrine was extended to redevelopment agencies in *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 890-891 (9th Cir. 1988), and it follows that the Doctrine applies to their successor agencies.

In applying the State Action Doctrine, courts apply a two-part test: "We must first determine whether the California legislature authorized the challenged actions of the city and the agency. Then we must determine whether the legislature intended to displace competition with regulation." *Id.* at 890. In applying this test to redevelopment agencies, the Ninth Circuit in *Boone v. Redevelopment Agency of City of San Jose* held that: (i) California's Redevelopment Act clearly authorizes the types of redevelopment activities that were challenged (including the enactment of rehabilitation plans, zoning and regulatory exceptions, condemnation, *etc.*); and (ii) while such activities may be inherently anticompetitive, the fact they are delegated to redevelopment agencies by the Redevelopment Act "convinces us that the state legislature 'clearly articulated and affirmatively expressed' a policy to permit anti-competitive acts, and that the state legislature contemplated the kind of municipal action about which the developer's complaint." *Id.* at 891 (*quoting Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 39, 44 (1985)).

This same reasoning applies to successor agencies here: successor agencies are authorized by the Redevelopment Dissolution Law to liquidate their properties and the Legislature clearly contemplated that such liquidation may be inherently anti-competitive by imposing the standard under Section 34177(e) of the California Health & Safety Code, described above. [*See* pp. 10-11, *supra*.]

Applying the State Action Doctrine in *Kern-Tulare Water Dist. v. City of Bakersfield*, 828 F.2d 514, 518-519 (9th Cir. 1987), the Ninth Circuit noted that "[a] city need not point to a specific, detailed legislative authorization before it may properly assert a *Parker* defense to an antitrust suit," and that "not every anticompetitive effect of a statute need be articulated in order to satisfy the 'clear articulation' requirement [Citations.] So long as the restraint is a 'foreseeable result' which results logically from a broad grant of regulatory authority to a city, the 'clear articulation' requirement is satisfied. [Citation.]" *Id.* at 518-519 (citations omitted). Applied here, the Redevelopment Dissolution Law need not articulate each possible action which may be undertaken by a successor agency in order for State Action Immunity to apply; rather, as long as the perceived anticompetitive action is a "foreseeable result" of the implementation of the Redevelopment Act's terms, State Action Immunity must lie for that action. Such is exactly the situation here, as SOCC alleges that the City sold the Subject Property to Fox Luggage, which was a "foreseeable result" of the Act's mandate to liquidate property under Section 34177(e) of the California Health & Safety Code.

The State Action Immunity Doctrine applies even in the context of "errors of fact, law or judgment by a public agency" that are not otherwise authorized. *Kern-Tulare Water Dist.* at 522. SOCC alleges that the City should have sold it the Subject Property because it submitted the highest bid, but this is essentially an allegation that the City erred in implementing its obligation to sell the Subject Property under the Redevelopment Dissolution Law to which State Action Immunity applies. Even allegations of graft and illicit purpose may not strip State Action Immunity, as noted

in dicta by the U.S. Supreme Court in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991); *see also Boone, supra*, at 890; *Llewellyn v. Crothers*, 765 F.2d 769, 774 (9th Cir. 1985) (directors of state agency with authority to set fee guidelines and maximum fee schedules do not lose State Action Immunity if they act in bad faith); *Thillens, Inc. v. Fryzel*, 712 F.Supp. 1319, 1327 (N.D. Ill. 1989) (immunity applies even if legislature that passed statute had been corrupted). These authorities lie squarely on the allegations made by SOCC and, because they trigger the State Action Immunity Doctrine, those claims fail against the City.

### B.    The Local Government Antitrust Act Of 1984 Applies Here

The Local Government Antitrust Act of 1984 ("**LGAA**") precludes the recovery of damages, costs, or attorney's fees for Sherman Act or Clayton Act violations from "any local government, or official or employee thereof acting in an official capacity." 15 U.S.C. §§ 34-36. Under the LGAA, a "local government" is defined as "a city, county, parish, town, township, village, or any other general function government unit established by State law" or "a school district, sanitary district, or any other special function governmental unit established by State law in one or more States." 15 U.S.C. § 34.

Both the City of Industry and the Successor Agency to the Industry Urban-Development Agency fall within the definition of a "local government" as defined in the LGAA: aside from the fact that the City of Industry is (obviously) a "city," the Successor Agency is a unit of government established by the Redevelopment Dissolution Act under Section 34173(a) of the California Health & Safety Code, and constitutes either a "general function governmental unit" or a "special function governmental unit," both of which are deemed to be units of "local government" as defined under the LGAA. 15 U.S.C. § 34(1)(A), (B).

In *Horisons Unlimited v. Santa Cruz-Monterey-Merced Managed Medical Care Comm'n*, 2014 WL 3342565 (E.D. Cal., July 2, 2014, No. 1:14-CV-00123-LJO-MJ), the court determined that a hospital district was a "special function

government unit" within the meaning of the LGAA, noting that "the 'language and legislative history of the LGAA is explicitly inclusive, not exclusive,'" and that, "[b]ecause Alliance was created and can be terminated by a county government pursuant to a California statute, vested by state statute with all rights and immunities vested in a county, and performs a localized public function of providing publicly assisted healthcare services, Alliance is a 'special function government unit' within the meaning of the LGAA." *Id.* at *13 (*quoting Palm Springs Med. Clinic, Inc. v. Desert Hosp.,* 628 F.Supp. 454, 457 (C.D. Cal. 1986); *Daniel v. Am. Bd. of Emergency Med.,* 988 F.Supp. 127, 197 (W.D. N.Y. 1997)).

The Successor Agency likewise was created by statutes, vested with all rights of a governmental entity and subdivision of the State of California, and must thus also be deemed a "government unit" under the LGAA. [*See also* 1AC ¶ 5 (City is "a unit of local government that is a body corporate and politic, and is a legal subdivision of the State of California.").] As such, the LGAA immunizes the City from liability on SOCC's Sherman Act and the Clayton Act claims.

## VII. THE FIFTH CAUSE OF ACTION UNDER THE CALIFORNIA UNFAIR COMPETITION LAW SHOULD BE DISMISSED BECAUSE PUBLIC ENTITIES ARE BEYOND THE SCOPE OF THAT LAW

SOCC's fifth causes of action alleges that the City violated California's Unfair Competition Law (California Business & Professions Code Section 17200, *et seq.*; the "**UCL**") because it allegedly engaged in a corrupt bidding process and responded evasively to SOCC's requests for information and documentation. [1AC ¶¶ 76-80.] This argument ignores the fact that the UCL does not apply to public entities as a matter of law. *Cal. Medical Ass'n, Inc. v. Regents of University of California* (2000) 79 Cal.App.4th 542.

Both the City of Industry and the Successor Agency are public entities. [*See* pp. 3-5, *supra*; *see also* 1AC ¶ 5.] As such, the City is not subject to SOCC's fifth cause of action for violation of the UCL, as a matter of law. *See also People for the*

*Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.*, 125 Cal.App.4th 871, 878-879 (Cal. Ct. App. 2005).

**VIII. THE SIXTH CAUSE OF ACTION SHOULD BE DISMISSED BECAUSE THE CITY IS A PUBLIC ENTITY NOT SUBJECT TO LIABILITY UNDER THE CARTWRIGHT ACT**

SOCC's sixth cause of action alleges that the City is liable under the Cartwright Act. [1AC ¶¶ 85-90.] The Cartwright Act is codified at Section 16700, *et seq.*, of the California Business & Professions Code and is the primary California state antitrust law prohibiting anti-competitive activity, mirroring federal antitrust laws the Sherman Antitrust Act and the Clayton Antitrust Act. *Younger v. Jensen*, 26 Cal.3d 397, 405 and fn 4 (Cal. 1980); *County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001).

The prohibitions imposed by the Cartwright Act apply only to "persons." Cal. Bus. & Prof. Code § 16720. A "person" is defined to include corporations, firms, partnerships and associations, but does ***not*** include municipalities and other political subdivisions. Cal. Bus. & Prof. Code § 16702. Courts have therefore held that the Cartwright Act does ***not*** apply to actions by government bodies. *Penn v. City of San Diego*, 188 Cal.App.3d 636, 643 (1987); *People ex rel. Freitas v. City and County of San Francisco*, 92 Cal.App.3d 913, 921 (1979); *Widdows v. Koch*, 263 Cal.App.2d 228, 235 (1968).

As noted above, the City here is a public entity and governmental body [*see* pp. 3-5, *supra*], and SOCC alleges as much in its complaint. [1AC ¶ 5.] The City is thus not liable for causes of action under the Cartwright Act.

"Where Cartwright Act claims are premised on the same facts as Sherman Act claims, and summary judgment is granted on the Sherman Act claims, summary judgment is also appropriate for Cartwright Act claims." *TYR Sport, Inc. v. Warnaco Swimwear, Inc.*, 709 F. Supp. 2d 821, 838 (C.D. Cal. 2010). Here, SOCC's fourth cause of action under the Sherman Act fails against the City as a matter of law, for

the reasons described above. It thus follows that SOCC's sixth cause of action under the Cartwright Act must likewise fail on the same grounds.

## IX. THE SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT SHOULD BE DISMISSED

SOCC's seventh cause of action[5] for tortious interference with contract must fail on grounds of immunity, and because such a claim requires a valid contract and SOCC does not allege that any contract for its purchase of the Subject Property was formed, nor the existence of any other contract to which the City interfered.

"The elements of a claim for tortious interference with contractual relations are '1) *a valid contract between plaintiff and a third party*; 2) defendant's knowledge of this contract; 3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage.'" *Sherwin-Williams Company v. Henry* 2014 WL 3909174, at *3 (N.D. Cal., Aug. 8, 2014, No. C-14-02292 DMR) (*quoting Pacific Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (emphasis added)). As a tort claim, the City is immune under California Government Code Section 818.8. [*See* pp. 12-13, *supra.*]

Further, SOCC does not allege that it formed a "valid contract" with the City or with any other party for the purchase of the Subject Property or for any other purpose. Without any valid agreement, SOCC has no basis to allege that the City tortuously interfered with its contract, and its eighth cause of action must fail. *Piping Rock Partners, Inc. v. David Lerner Associates, Inc.* (N.D. Cal. 2013) 946 F.Supp.2d 957, 980, aff'd (9th Cir. 2015) 609 Fed.Appx. 497 (claim for tortious interference with contract which "offers no specific evidence that a contract exists, that the contract was breached or disrupted, or that [plaintiff] suffered damages" must be dismissed); *see also Authority for California Cities Excess Liability v. City of Los Angeles*, 136 Cal.App.4th 1207, 1212 (Cal. Ct. App. 2006) (contract with city does

---

[5] Erroneously identified as its eighth cause of action. [*See* 1AC at 19:4.]

not exist unless it is in writing, approved by city council, and signed).

To the extent SOCC asserts that its tortious interference with contract claims are valid because they arise from its Sherman Act claims, such argument should be rejected in light of *Jensen Enterprises, Inc. v. Oldcastle Precast Inc.*, 2009 WL 440492, at *8 (N.D. Cal., Feb. 23, 2009, No. C 06-247 SI), aff'd (9th Cir. 2010) 375 Fed.Appx. 730. In *Jensen Enterprises, Inc.*, defendants argued that plaintiff's claim for tortious interference with contract must be dismissed because plaintiff "had not identified any contract of which defendants had knowledge or with which defendants intended to interfere...." *Id.* at *8. Plaintiff argued that, because it raised antitrust claims, "it can also maintain the tortious interference claims." *Id.* The Ninth Circuit agreed that "plaintiff's tortious interference claims depend on its antitrust claims," but, "[s]ince the Court has determined that plaintiff cannot establish antitrust violation or antitrust injury, plaintiff has not established the tortious or wrongful conduct essential to a tortious interference claim." *Id.* This same reasoning applies here, for SOCC's Sherman and Cartwright Act claims have no merit and, thus, cannot support its claim of tortious interference with contract.

In *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6354534, at *13 (N.D. Cal., Dec. 5, 2013, No. C-13-3826 EMC), the court considered, *inter alia*, whether Uber drivers could maintain a cause of action for tortious interference with contract based on an alleged interference with customer tipping. The drivers alleged that Uber discourages customer tipping by advertising that tips are included in fares, thereby interfering with drivers' contractual relations with customers and their prospective tips. *Id.* at 13. The court disagreed, and held that the drivers "cannot meet the first element of the tort because there can be no valid contract for the payment of voluntary gratuities. An *illusory* agreement, in which no obligation is assumed by at least one of the parties, is not an enforceable contract under California law." *Id.* at 14 (emphasis added).

A similar situation is alleged by SOCC, claiming to have some "contract rights

with respect to the purchase of the City's surplus Subject Property" [1AC at 19:16-18], but not alleging that any actual contract had been entered into between it and the City, and instead alleging merely that it had submitted a higher bid for purchase of the Subject Property than Fox Luggage [1AC ¶¶ 27-29]. Having no contract with the City, SOCC cannot satisfy the first element on a cause of action for tortious interference with contract – and beyond this, as merely a bidder on a proposed sale of the Subject Property, any alleged agreement between SOCC and the City was *illusory*, since SOCC's alleged right to purchase the Subject Property was simply one bid among several, with no obligation by the City to sell the Subject Property at all. As with the Uber drivers claiming interference with an *illusory* agreement for potential customer tips, SOCC claims interference with an *illusory* agreement for purchase of the Subject Property which cannot form the basis of a claim for tortious interference with contract.

### CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss SOCC's complaint in its entirety and without leave to amend, or, in the alternative, dismiss with leave to amend only as to those causes of action which the Court finds the City may be subject to.

Dated: November 27, 2017    **CASSO & SPARKS, LLP**


By: */s/ James M. Casso*
JAMES M. CASSO
*Attorneys for Defendant* SUCCESSOR
AGENCY TO THE INDUSTRY
URBAN-DEVELOPMENT AGENCY
E-mail: jcasso@cassosparks.com